IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| KELLY CAHILL, | ) | |
| Plaintiff | ) | |
| v. | ) | No. 3:03-cv-00257 |
| ROBERT WALKER; HARRY MONTGOMERY, CHIEF OF GATLINBURG POLICE DEPARTMENT; and CITY OF GATLINBURG, TENNESSEE, | ) ) ) | |
| Defendants | ) | |

## MEMORANDUM OPINION

This is a civil rights action brought pursuant to 42 U.S.C. § 1983 against the City of Gatlinburg, its Police Chief Harry Montgomery, and former Officer Robert Walker. Kelly Cahill ("Plaintiff") alleges that Officer Walker sexually assaulted her while on duty with the Gatlinburg Police Department, that Chief Montgomery was deliberately indifferent to the constitutional rights of Plaintiff and to other women previously sexually assaulted or harassed by Officer Walker, and that the City of Gatlinburg maintained a custom or policy of not adequately training its officers with regard to sexual harassment of private citizens and of failing to adequately investigate claims of sexual harassment or assault. Currently pending is the motion for summary judgment of defendants City of Gatlinburg and Chief Montgomery. [Court File No. 21]. For the reasons that follow, the motion is granted with respect to the claim of inadequate training. In all other respects, the motion is denied.

1

I.

*Factual Background*

The following factual allegations are considered in the light most favorable to the Plaintiff.

Plaintiff alleges that on August 11, 2002 at approximately 1:00 a.m., Gatlinburg Police Officer Robert Walker, Jr. was on duty and stopped the vehicle in which Plaintiff was a passenger. Officer Walker charged Plaintiff's friend, who had been driving the vehicle, with public drunkenness, and the friend was taken to jail. The vehicle was impounded at the City impoundment lot. According to Plaintiff, she was taken by Officer Walker to the impoundment lot and then to another location. Plaintiff alleges that Officer Walker then sexually assaulted her.

On August 12, 2002, Plaintiff told her friend Julie McMillan that Officer Walker had sexually assaulted her, and McMillan insisted that Plaintiff speak with McMillan's brother-in-law, Gatlinburg Police Officer Chris Brien. Plaintiff told Officer Brien about the alleged assault, and Officer Brien phoned the Gatlinburg Chief of Police Harry Montgomery to report Plaintiff's allegations.

On August 14 or 15, 2002, Plaintiff, her father John Cahill, and attorney Charlie Kite met with Officer Montgomery and Gatlinburg Police Officer Keith Brackins to discuss the alleged assault. On August 19, 2002, Officer Walker was placed on administrative leave, pending the outcome of an internal misconduct investigation. Detective Tom Trotter of the Gatlinburg Police Department conducted the internal investigation of the matter, and the Tennessee Bureau of Investigation began a criminal investigation of Officer Walker. Because Officer Walker failed to cooperate in the internal investigation by refusing to give a statement to Detective Trotter, he

2

was terminated by the City on September 20, 2002.

Prior to Plaintiff's alleged sexual assault, the Gatlinburg Police Department had received several complaints concerning Officer Walker's on-duty behavior. Plaintiff asserts that Officer Walker, while on duty, sexually harassed or assaulted women on five separate occasions prior to this incident. According to Plaintiff, four of the five alleged victims made oral or written complaints concerning these incidents to Gatlinburg police officers, and a manager of the establishment where the fifth incident occurred sent a written complaint to Chief Montgomery. Plaintiff asserts that these complaints prove that Chief Montgomery had either actual or constructive notice of Officer Walker's alleged behavior prior to the alleged assault on the Plaintiff. Officer Montgomery, however, testified by deposition that, although he knew of some prior complaints regarding Officer Walker's conduct prior to this incident, he had not received any complaints concerning misconduct of a sexual nature. Chief Montgomery also testified that the only disciplinary action he took against Officer Walker prior to this incident regarded two traffic accidents.

## II.

*Summary Judgment Standards*

Pursuant to Rule 56, summary judgment shall be rendered when requested if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. It is the burden of the party seeking summary judgment to show the court that, under uncontradicted facts, the moving party is entitled to

judgment as a matter of law. Summary judgment is intended to provide a quick, inexpensive means of resolving issues as to which there is no dispute regarding the material facts. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). In assessing the validity of a summary judgment motion, the court views the pleadings, depositions, answers to interrogatories, admissions, and competent affidavits in a light most favorable to the opponent of the motion. However, an opponent to a motion for summary judgment may not rest upon the mere allegations or denials of his pleadings, but must set forth issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id*. Rule 56 mandates the entry of summary judgment, after adequate time for discovery upon motion, against a party who fails to make a showing sufficient to establish the existence of an essential element of that party's case, and on which the party will bear the burden of proof at trial. *Catrett*, 477 U.S. at 322.

III.

*Supervisory Liability*

In a Section 1983 claim, a plaintiff cannot base a supervisory liability claim solely on the doctrine of respondeat superior. *Doe v. Claiborne County, Tennessee*, 103 F.3d 495, 507 (6th Cir. 1996) (*citing Monell v. Dept. of Social Servs.*, 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978)). In *Bellamy v. Bradley*, the Sixth Circuit established a "supervisory liability" test, which provides that, at a minimum, the "plaintiff must show that a supervisory official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional

4

conduct of the offending subordinate." *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984), *cert. denied*, 469 U.S. 845, 105 S.Ct. 156, 83 L.Ed.2d 93 (1984). Neglectful performance of supervisory duties is not enough to satisfy the test. *Id*. at 416. The supervisor's conduct must have "amounted to a tacit authorization of the abuse." *Doe v. Claiborne County*, 103 F.3d at 513 (*citing Bellamy*, 729 F.2d at 421). When a supervisor's alleged failure to act is at issue, the "plaintiff must show that, in light of the information the defendant[] possessed, the [officer] who engaged in sexual abuse 'showed a strong likelihood that he would attempt to' sexually abuse other [individuals], such that the 'failure to take adequate precautions amounted to deliberate indifference' to the [plaintiff's] constitutional rights. . . ." *Doe v. Claiborne County*, 103 F.3d at 513 (*citing Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992)).

Here, to satisfy the supervisory liability test, Plaintiff must prove that Chief Montgomery knew of the sexual nature Officer Walker's prior misconduct. If the court finds that Chief Montgomery did know of Officer Walker's alleged prior incidents of sexual harassment and assault, Plaintiff may be able to prove that his failure to take disciplinary action to prevent future incidents demonstrated "deliberate indifference" and thus was a "tacit authorization"of Officer Walker's misconduct. *See Doe v. Claiborne County*, 103 F.3d at 513 (*citing Barber*, 953 F.2d at 240); *Bellamy*, 729 F.2d at 421. Chief Montgomery claims he had no knowledge that the complaints received by the Gatlinburg Police Department alleged misconduct of a sexual nature. Plaintiff, however, asserts that Chief Montgomery did have knowledge that Officer Walker's prior misconduct was of a sexual nature. Even if he did not have actual notice, says Plaintiff, the prior complaints at least provided constructive notice. Therefore, "in light of the information the defendant[] possessed," his failure to take action constituted tacit authorization. *Doe v.*

5

*Claiborne County*, 103 F.3d at 513 (*citing Barber v. City of Salem*, 953 F.2d at 240). Because a material issue of fact exists regarding Chief Montgomery's actual or constructive notice of the alleged sexual nature of Officer Walker's prior misconduct, Chief Montgomery's motion for summary judgment is denied.

IV.

*Qualified Immunity*

Qualified immunity is an affirmative defense available to government officials performing discretionary functions. *Shehee v. Luttrell*, 199 F.3d 295, 299 (6th Cir. 1999) (*citing Harlow v. Fitzgerald*, 457 U.S. 800, 817-18, 102 S.Ct 2727, 73 L.Ed.2d 396 (1982)). Under this thoery, "government officials are immune from civil liability when acting in an official capacity if their actions do not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Id*. at 299 (*quoting Harlow*, 457 U.S. at 818, 102 S.Ct. 2727). The Sixth Circuit applies a two-pronged inquiry to determine whether qualified immunity is available to a government official: 1) Whether the plaintiff has shown a deprivation of a constitutional right; and 2) Whether that right was "clearly established such that a reasonable official would have understood that his behavior violated that right." *Id*. at 299-300 (*citing Summar v. Bennett*, 157 F.3d 1054, 1058 (6th Cir. 1998)). If both questions are answered in the affirmative, then qualified immunity is not available.

In *Doe v. Claiborne County, Tennessee*, the Sixth Circuit addressed the first inquiry, whether the plaintiff has shown a deprivation of a constitutional right, and found that "the right to be free from sexual [assault] at the hands of a state actor . . . is clearly embraced by the more

6

general right to personal security and to bodily integrity." *Doe v. Claiborne County*, 103 F.3d at 506. The Supreme Court has long recognized that "[n]o right is held more sacred, or is more carefully guarded . . . than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law." *Id*. (*citing Union Pac. Ry. Co. v. Botsford*, 141 U.S. 250, 251, 11 S.Ct. 1000, 1001, 35 L.Ed. 734 (1891)). Moreover, in the Sixth Circuit, "[i]t is well established that persons have a fourteenth amendment liberty interest in freedom from bodily injury." *Id*. (*citing Webb v. McCullough*, 828 F.2d 1151, 1158 (6th Cir. 1987)). Here, Plaintiff alleges that she was sexually harassed and assaulted by Officer Walker. If Plaintiff's allegations are true, Officer Walker's behavior would constitute a definite invasion of Plaintiff's fundamental fourteenth amendment right to personal security and bodily integrity. Thus, the first inquiry is answered in the affirmative.

In addressing the second inquiry, the court must determine whether the plaintiff's constitutionally-protected right is "clearly established." *Wilson v. Layne*, 526 U.S. 603, 614, 119 S.Ct. 1692 (1999). A right is clearly established if "a reasonable officer would understand that what he is doing violates that right." *Id*. at 614-15 (citations omitted). Certainly, a reasonable police officer would understand that sexually harassing and assaulting an individual violates a constitutionally-protected right; however, this court does not now address Officer Walker's conduct. Here, the conduct at issue is Chief Montgomery's *inaction*, failing to discipline Officer Walker for his alleged prior sexual misconduct. The appropriate question is whether a reasonable supervisor would have understood that, by failing to discipline Officer Walker, he was allowing the misconduct to continue and thus proximately causing Plaintiff's constitutional

7

right to be violated. *Id.* In *Lynn v. City of Detroit*, the court found that this question "turns on whether the defendant[] knowingly acquiesced in [the] subordinates' unconstitutional conduct, to the plaintiffs' injury." *Lynn v. City of Detroit*, 98 Fed. Appx. 381, 382, 2004 WL 784113 (6th Cir. April 5, 2004).

In this case, the question of whether Chief Montgomery "knowingly acquiesced" in Officer Walker's alleged misconduct is dependent on the question of whether he *knew* of that misconduct. When genuine issues of material fact remain as to an element of qualified immunity, summary judgment on qualified immunity is not appropriate. *See Singfield v. Akron Metropolitan Housing Authority*, 389 F.3d 555, 567 (6th Cir. 2004). Here, the factual issue of whether Chief Montgomery knew of Officer Walker's prior misconduct is intertwined with the second prong of the qualified immunity inquiry. Chief Montgomery is therefore not entitled to summary judgment on the issue of qualified immunity.

V.

*Municipal Liability*

A county or local government may be held liable under Section 1983 only where "the plaintiff's constitutional rights have been violated as a result of a 'policy' or 'custom' attributable to the county or local government." *Holloway v. Brush*, 220 F.3d 767, 772 (6th Cir. 2000). A municipal liability claim must be examined by applying a two-pronged inquiry: 1) Whether the plaintiff has asserted the deprivation of a constitutional right; and 2) Whether the local government is responsible for that violation. *Doe v. Claiborne County*, 103 F.3d at 505-06; *see Collins v. City of Harker Heights*, 503 U.S. 115, 120, 112 S.Ct. 1061, 1065-66, 117 L.Ed.2d

261 (1992). For the defendant municipality to be held liable, both questions must be answered in the affirmative. *Doe v. Claiborne County, Tennessee*, 103 F.3d at 506.

Here, the threshold question has already been answered. By alleging that she was sexually harassed and assaulted by an on-duty police officer, Plaintiff has asserted the deprivation of a fundamental constitutional right. The local government, however, will only be found responsible for that deprivation if "the plaintiff can establish that an officially executed policy, or the toleration of a custom within the [city] leads to, causes, or results in the deprivation of [that] constitutionally protected right." *Doe v. Claiborne County*, 103 F.3d at 507 (*citing Monell*, 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978)). Plaintiff asserts that the City of Gatlinburg caused the deprivation of her constitutional rights in two ways: 1) By failing to adequately train its police force; and 2) By failing to adequately investigate complaints of police misconduct. Each of these alleged failures must be examined individually.

A.

*Failure to Train*

When a plaintiff alleges inadequate police officer training as a basis for Section 1983 liability, the plaintiff must show that "the [city's] failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388, 109 S.Ct. 1197 (1989). The plaintiff must also show that "there is a direct causal link between [the failure to train] and the alleged constitutional deprivation." *Id*. at 385. Here, Officer Walker has testified that he knew it was wrong to assault the victim and knew of the department's policy against sexual harassment. Thus, even if the

9

City had an inadequate training policy, it was not a proximate cause of the assault, and no reasonable jury could find that required causation element. The City of Gatlinburg is therefore entitled to summary judgment on this issue.

B.

*Failure to Investigate*

When a plaintiff alleges a failure to investigate a police officer's alleged misconduct as a basis for Section 1983 liability, the plaintiff must show that the municipality's failure to act constituted an official policy or custom which ultimately led to the deprivation of a constitutional right. *See Doe v. Claiborne County*, 103 F.3d at 507. Under this "inaction" theory, the plaintiff must establish: 1) that the police officer's behavior constituted a clear and persistent pattern of sexual misconduct; 2) that the city government had notice or constructive notice of this sexual misconduct; 3) that the City of Gatlinburg was deliberately indifferent to the unconstitutional sexual misconduct, such that its failure to act can be said to amount to an official policy of inaction; and 4) that the City of Gatlinburg's custom directly caused the constitutional deprivation. *See id.* at 508 (citations omitted).

Here, the five prior complaints against Officer Walker alleging misconduct of a sexual nature arguably establish a "clear and persistent pattern of sexual misconduct." *See id.* at 508. A material issue of fact exists as to whether the City of Gatlinburg had actual or constructive notice of this misconduct. Because the court cannot determine whether the city government was "deliberately indifferent" without first deciding whether the government knew of the sexual nature of the complaints, the City of Gatlinburg is not entitled to summary judgment on the issue

10

of its alleged failure to investigate.

VI.

*Conclusion*

Defendant City of Gatlinburg's motion for summary judgment on the issue of the police department's alleged failure to train its officers is granted. Summary judgment is otherwise denied.

Order accordingly.

                                                  *s/ James H. Jarvis*
                                         UNITED STATES DISTRICT JUDGE